UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| DONALD W. RICHTER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-1623-WTL-TAB |
| | ) | |
| CORPORATE FINANCE ASSOCIATES, LLC, | ) | |
| Defendant. | ) | |

## **ENTRY AND ORDER**

This cause involves a dispute over what is purportedly an employment contract but which, for all intents and purposes, was part of a series of contracts entered into for the sale of a business. Pursuant to the terms of the contract, Plaintiff, Donald W. Richter ("Richter"), was to receive payment in the amount of $453,750.00 over the course of eight years in salary installment payments, payment of up to $500.00 per month to cover the expense of an automobile lease, and commissions. The total salary and commissions payments were subject to meeting certain conditions and achieving a target quota over the eight-year period of the Employment Agreement.  Richter initiated this lawsuit claiming that Defendant, Corporate Finance Associates, LLC ("CFA"), breached the contract by failing to pay him all of the salary installment payments, failing to make all of the lease payments, and failing to pay him a commission to which he believes that he is entitled.  Richter also claimed that he is entitled to liquidated damages under Indiana's Wage Payment Statute pursuant to Indiana Code § 22-2-5-2, as well as reasonable attorney's fees, costs, and interest.  CFA denies that it breached the contract and filed a counterclaim asserting that Richter must reimburse it $8,827.87 that it allegedly paid on an automobile lease and believes that it was not obligated to pay.

Following discovery, the parties filed cross motions for summary judgment.  On March 28, 2008, this Court ruled on the cross motions, granting in part and denying in part CFA's motion and denying Richter's motion in its entirety.  The Court concluded that the employment contract was ambiguous and that questions of fact precluded an entry of judgment on Richter's claims or the counterclaim.  However, the Court found that Richter was not entitled to liquidated damages pursuant to Indiana Code § 22-2-5-2 in the event that he did prevail on his claims and entered summary judgment in favor of CFA on that issue.  As a result of its ruling, the Court scheduled this cause for a trial to resolve the claims and counterclaim.

Thereafter, the parties jointly moved for reconsideration of the Court's summary judgment rulings and urged the Court to decide the claims and counterclaim on the record before it without the benefit of a trial.  The Court agreed to do so, and it directed the parties to submit a joint statement of undisputed facts and invited them to submit additional briefs in support of their respective positions.  The parties have filed these additional materials, and the Court, having reviewed them, is ready to rule on each of the following issues:

1.  Whether Richter is entitled to receive a commission and, if so, the amount of the commission;

2.  Whether Richter is entitled to receive additional salary installment payments and automobile lease payments and, if so, the amount of those payments;

3.  If Richter recovers on one or both of his claims, whether he is entitled to recover liquidated damages, costs, and attorney's fees; and

4.  Whether CFA is entitled to recover the amount that it claims it overpaid on the automobile lease.

Before addressing these four issues, the Court pauses to note that the material facts are not in dispute.  Therefore, the Court adopts and incorporates herein the recitation of the facts as stated

2

in the Court's March 28, 2008, Entry.  *See* Docket No. 62.  The Court also incorporates herein by reference the recitation from that Entry of the relevant law on contract interpretation.  Finally, the Court reaffirms its earlier conviction that the relevant employment contract provisions addressing the commission and salary installment payments are ambiguous; as such, the Court must review extrinsic evidence in order to resolve the parties' disputes.

### I.  Unpaid Commission

Richter contends that he is entitled to a net commission of $124,427.85 for the first year of the employment contract running from April 2001 to April 2002.[1]  CFA does not dispute the calculation; however, it contends that it does not owe Richter the requested commission because it believes Richter was not entitled to any credit on the Deerfield transaction, which generated a total -- with previously paid retainers -- of $338,769.84 in fees.  CFA relies on Section 6 of the Employment Agreement for its argument and contends that the commission is inappropriate because the Deerfield transaction was a "current acquisition, merger or divestiture transaction" and Richter did not "enable the transaction to close."

As the Court recognized in its March 28, 2008, Entry, the terms "current" and "enable" are not defined by the parties' agreements.  However, as to the first term, the Court finds it hard to believe that the Deerfield transaction would have been a "current" transaction when Deerfield did

---

[1]  As the Court reads the agreements, based largely on the examples attached to the Addendum Agreement, Richter would be paid a commission only in the event that his calculated portion exceeded the total amount of his salary plus automobile and office expenses, in which case he received the difference between the two figures.  Richter's calculation has taken this understanding into account.  Therefore, if his position is correct, he is entitled to the full amount of commission that he has requested.

3

not sign a fee agreement with CFA until May 7, 2001, after the parties' agreements had already gone into effect.  In fact, all of the evidence suggests that Deerfield was merely a prospective client at the time that the parties' agreements became effective.  The Court need not definitively decide this question, however, because it concludes that Richter would be entitled to a commission under the "enabling" provision even if the Deerfield transaction would fall with the meaning of the "current" transaction clause.

Although the term "enable" is not defined by the parties' agreements, it is a general practice to look to dictionaries to help determine the commonly understood meaning of undefined terms in a contract.  *See, e.g.*, *Applegate v. Colucci*, 908 N.E.2d 1214, 1220-21 (Ind. Ct. App. 2009) (using dictionary to define terms "residential," "residence," and "subdivide" in restrictive covenant).  The term "enable" has been defined as "to give power to do something; to make able," "to provide with means, opportunity, power, or authority," and "to make possible or effective."  *See, e.g.*, BLACK'S LAW DICTIONARY 526 (6th ed. 1990); WEBSTER'S NEW WORLD DICTIONARY 446 (Third College Ed. 1988).  Based on these definitions, the Court easily finds that Richter's actions certainly enabled the Deerfield  transaction.  Richter's work included obtaining the fee agreement, preparing a list of target companies as prospective buyers that included the eventual buyer, preparing a confidential information memorandum about Deerfield, contacting the eventual buyer to obtain a confidentiality agreement, and consulting with Deerfield's president regarding some of the deal terms during the negotiating process.  These actions are more than enough for the Court to conclude that Richter enabled the transaction.  Indeed, even CFA's manager recognized that Richter was the main deal maker of the transaction.

Based on the foregoing, the Court concludes that Richter is entitled to the requested commission in the amount of $124,427.85.  Accordingly, the Court will enter judgment in favor of Richter for that amount.

## II.  Unpaid Salary and Automobile Lease Payments

Richter has received $309,580.00 in salary installment payments at this point.[2]  He was last paid in May 2006, which represented the January 2006 payment because CFA had fallen behind on the installment payments.  Therefore, Richter has not received salary payments representing the February 2006 payment through the April 2009 payment, the end of the eight-year employment period.  Section 3 of the Employment Agreement specifies that Richter was to receive $453,750.00 over the eight-year period.  Consequently, there is a shortage of $144,170.00 that is potentially owed on the salary installment payments, subject to the limitations in the Addendum Agreement regarding the Commission Quota, which must be addressed.

As the Court previously noted in the March 28, 2008, Entry, the Addendum Agreement obligated Richter to reach a target of $150,000.00 on the Commission Quota.  This quota is to be measured by referring to the net commissions retained each by CFA, which was the amount of fees CFA earned.  In other words, absent some fee arrangement whereby a third party would be entitled to a portion of the fees, it represented 40% of the fees for a given year.  As the examples attached to the Addendum Agreement illustrate, a running tally would be kept from year to year until Richter

---

[2]  The recognizes that Richter has received a total of $310,067.88; however, $487.88 represents a reimbursement payment for a January 2002 automobile lease payment, something that CFA was separately obligated to pay pursuant to Section 7 of the Employment Agreement. Therefore, the Court has excluded this amount from the salary installment payments that are independently owed under Section 3.

achieved the target goal.  The issue is whether Richter achieved the goal and, if not, what the consequences are as it relates to his salary payments.

Unfortunately, as the Court noted in its prior Entry the paragraph addressing this matter was poorly drafted and includes confusing language.  One possible solution for interpreting the provision, which is implied by CFA in its defense, is to assume that Richter gets no salary payments until he has generated enough commissions.  Of course, that simplistic interpretation is belied by the parties' past practices because Richter began receiving and continued to receive salary payments without regard to the commissions from his first day of employment.

Additional extrinsic evidence -- which the parties have not provided -- naturally would have helped to shed light on the parties' intent regarding the paragraph in question.  But this lack of additional evidence does not deter the Court because the solution for understanding how the Commission Quota was intended to work, in the Court's mind, is provided by the examples attached to the Addendum Agreement.  Those examples illustrate that 40% of the yearly fees went into a quota "bank," regardless of whether Richter was entitled to receive any commission payment for the year.  The notes attached to the examples also explain that deficits in the Commission Quota would be made up in the final years of the Employment Agreement by deducting the difference from salary payments.

Based on the examples and explanatory notes, the Court concludes that the parties intended for Richter to paid a total of $453,750.00 subject to him generating a Commission Quota of $150,000.00, calculated as the Court has explained.  If he failed to reach that target goal, then the deficit or shortfall would be deducted from his salary payments in the last years of employment. In other words, the Commission Quota -- which would result in a "penalty" on the salary payments

6

if not achieved -- served as an incentive for Richter to generate business because, as the parties recognize, he really was not obligated to do much at all under the agreements.

Having determined the meaning and effect of the Commission Quota, the Court must calculate how much of the quota Richter achieved.  Based on the Court's conclusion regarding the unpaid commission for the Deerfield transaction, Richter generated a total of $340,795.04 in fees the first year of employment.  He also testified that he generated another $500.00 in fees on another occasion.  In total then, he generated $341,295.04 in fees during the eight-year period of the employment arrangement.  CFA's share and what went toward the quota, based on the 40% calculation, is $136,518.02.  Subtracting this amount from the required goal of $150,000.00 means that Richter is short $13,481.98 on the quota.  Therefore, after subtracting this deficit from the amount of unpaid salary ($144,170.00), the Court concludes that CFA owes Richter $130,688.02 in unpaid salary.  The Court will enter judgment in favor of Richter for that amount on the his claim for unpaid salary.

As a final matter, the Court notes that Richter has alleged in his Amended Complaint that he had to pay $530.00 (which included a late fee) for the May 2006 automobile lease, something that CFA was obligated to do pursuant to Section 7 of the Employment Agreement.  He requested that CFA be ordered to make all future payments as required by the agreement.  The Court agrees that CFA should have to pay on the automobile lease as provided by Section 7.  However, beyond the $530.00  the Court is unable to determine what amount, if any, that CFA allegedly failed to pay.  Therefore, the parties will have to submit additional information on this matter.  The parties are **ORDERED to meet and confer on this matter and file a stipulation on the amount of unpaid automobile lease payments within thirty (30) days of the day of this Entry and Order**.  If the

parties are unable to agree on the amount, Richter shall instead file his statement of the amount **within the time period provided above**, and CFA shall file its objection **within seven (7) days after Richter files a statement**.

### III.  Request for Liquidated Damages, Costs, and Attorney's Fees

Richter contends that he is entitled to liquidated damages for the amount of unpaid commission and salary.  The Court is unpersuaded that its earlier conclusion on this matter was wrong.  Rather than rehash the reasoning for the Court's earlier ruling, the Court simply reiterates that the claim for penalties is barred by the applicable two-year statute of limitations, and the salary installment payments are not "wages" under Indiana's Wage Payment Statute.  Consequently, Richter is not entitled to liquidated damages.

Richter also requests costs and attorney's fees.  Indiana follows the American Rule when it comes to these items.  *See Thor Elec., Inc. v. Oberle & Assocs., Inc.*, 741 N.E.2d 373, 382 (Ind. Ct. App. 2000); *Biomet Inc. v. Tact Med. Instruments Inc.*, No. 3:01 CV 895, 2005 WL 1563429, at *9 (N.D. Ind. June 30, 2005).  Indiana courts have repeatedly held that attorneys' fees are not recoverable absent an agreement, statute, or rule.  *See Thor Elec., Inc.*, 741 N.E.2d at 382; *see also Utica Mut. Ins. Co. v. Vigo Coal Co.*, 393 F.3d 707, 715 (7th Cir. 2004) (noting that Indiana, like most states, does not permit an award of attorneys' fees as a matter of course in a breach of contract case).  Here, Richter has not directed the Court's attention to any provision of the parties' agreements, a statute, or a rule that would permit the recover of costs and fees.  Therefore, Richter is not entitled to recover those amounts.

### IV.  Counterclaim for Alleged Overpayments on Automobile Lease

The Court next addresses CFA's counterclaim that it is entitled to recover $8,827.87 in overpayments on an automobile lease.   Unfortunately, CFA has presented no evidence demonstrating that it in fact overpaid anything.  For instance, the Court sees no evidence detailing when payments were supposedly made, the amount of those payments, and to whom the payments were made.  For the all the Court knows, the $8,827.87 simply could be payments that CFA was obligated to make pursuant to Section 7 of the Employment Agreement.  But without additional information, the Court has no way of knowing this.  Moreover, CFA does not even raise the issue in its briefs to this Court other than to comment in its summary judgment briefs that factual disputes precluded the entry of summary judgment on the counterclaim.  Because the parties have urged the Court to make a ruling on all pending claims on the record before it, and because CFA has failed to present any evidence to prove its counterclaim, the Court finds against CFA on its counterclaim.  Therefore, the Court will enter judgment in favor of Richter on the counterclaim.

### V.  Miscellaneous Matters

As a final matter, the Court must address the issue of prejudgment interest.  In Indiana, "an award of prejudgment interest in a contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable." *Noble Roman's, Inc. v. Ward,* 760 N.E.2d 1132, 1140 (Ind. Ct. App. 2002) ( *citing J.S. Sweet Company, Inc. v. White County Bridge Commission,* 714 N.E.2d 219, 225 (Ind. Ct. App. 1999)).  Thus, "[t]he test for determining whether an award of prejudgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time." *Ward,* 760 N.E.2d at 1140. The award

generally is not considered a matter of discretion and is proper if the "trier of fact need not exercise its judgment to assess the amount of damages." *J.S. Sweet,* 714 N.E.2d at 225; *Dale Bland Trucking, Inc. v. Kiger,* 598 N.E.2d 1103, 1106 (Ind.App.1992).

The applicable statutes for determining prejudgment interest rates in breach of contract cases in the absence of an agreement are Ind. Code §§ 24-4.6-1-102 and 24-4.6-1-103.  Those sections provide a rate of 8% per annum from the date of settlement on money.  The Indiana Court of Appeals has made clear that this means that prejudgment interest should be calculated from the time at which the money was due.  *Town & Country Mutual Insurance Co. v. Savage,* 421 N.E.2d 704, 709 (Ind. Ct. App. 1981).

Based on the foregoing, the Court concludes that Richter is entitled to prejudgment interest at 8% per annum on the unpaid commission, unpaid salary, and unpaid automobile lease payments. Just like the Court has ordered the parties to do regarding the lease payments, the parties are **ORDERED to meet and confer on this matter and file a stipulation on the total amount of prejudgment interest owed within thirty (30) days of the day of this Entry and Order**.  If the parties are unable to agree on the amount, Richter shall instead file his statement of the amount **within the time period provided above**, and CFA shall file its objection **within seven (7) days after Richter files a statement**.

IT IS SO ORDERED: 09/02/2009

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution attached.

**Electronically distributed to:**

Adam D. Christensen
LEWIS & KAPPES
achristensen@lewis-kappes.com

David W. Gray
LEWIS & KAPPES
dgray@lewis-kappes.com

Gordon  Locke
lockelaw@cyburban.com

Shane C. Mulholland
BURT, BLEE, DIXON, SUTTON & BLOOM
smulholland@burtblee.com